Approved: _____
          SARAH L. KUSHNER/MITZI S. STEINER
          Assistant United States Attorneys

Before:   HONORABLE STEWART D. AARON
          United States Magistrate Judge
          Southern District of New York

------------------------------------X
                                     :        **22 MAG 9635**
UNITED STATES OF AMERICA             :        **<u>SEALED COMPLAINT</u>**
                                     :
              -v.-                   :        Violations of 18 U.S.C.
                                     :        §§ 371, 922(a)(3),
JAMIL HAKIME,                        :        922(g), and 2.
                                     :
              Defendant.             :        COUNTY OF OFFENSE:
                                     :        NEW YORK
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        NATHAN RUDNICK, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

<u>**COUNT ONE**</u>
(Conspiracy to Transport a Firearm Interstate)

        1.   In or about November 2022, in the Southern District
of New York and elsewhere, JAMIL HAKIME, the defendant, and others
known and unknown, willfully and knowingly did combine, conspire,
confederate, and agree together and with each other to commit an
offense against the United States, to wit, the unlawful interstate
transport of a firearm, in violation of Title 18, United States
Code, Section 922(a)(3).

        2.   It was a part and an object of the conspiracy that
JAMIL HAKIME, the defendant, and others known and unknown, not
being licensed importers, licensed manufacturers, licensed
dealers, or licensed collectors, would and did transport into and
receive in the State where they reside a firearm purchased and
otherwise obtained outside that State, in violation of Title 18,
United States Code, Section 922(a)(3).

<u>Overt Acts</u>

3.   In furtherance of the conspiracy and to effect the illegal object thereof, JAMIL HAKIME, the defendant, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about November 18, 2022, HAKIME, a resident of New York State, drove two other residents of New York State ("CC-1" and "CC-2") from Manhattan, New York to Pennsylvania in order to obtain a firearm for CC-1 and CC-2.

b.   HAKIME, CC-1, and CC-2 obtained a firearm in Pennsylvania and subsequently drove together with the firearm back from Pennsylvania to Manhattan.

(Title 18, United States Code, Section 371.)

**COUNT TWO**
(Interstate Transport of a Firearm)

4.   In or about November 2022, in the Southern District of New York and elsewhere, JAMIL HAKIME, the defendant, not being a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms, did willfully and knowingly transport into and receive in the State where he resides a firearm purchased and otherwise obtained by HAKIME outside that State, to wit, HAKIME, a resident of New York State, obtained a firearm in Pennsylvania to supply to CC-1 and CC-2 and transported the firearm with CC-1 and CC-2 from Pennsylvania to Manhattan.

(Title 18, United States Code, Sections 922(a)(3), 924(a)(1)(D), and 2.)

**COUNT THREE**
(Felon in Possession of a Firearm or Ammunition)

5.   In or about November 2022, in the Southern District of New York and elsewhere, JAMIL HAKIME, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly and intentionally did possess a firearm and ammunition, to wit, a generation 5 Glock 17 handgun and 9mm bullets, and the firearm and ammunition were in and affecting commerce.

(Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

6.    I have been involved in the investigation of this matter, and I base this affidavit on that experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## **Overview**

7.    JAMIL HAKIME, the defendant, is a resident of New York State and a convicted felon who appears to be engaged in the trafficking of firearms and ammunition. As discussed below, on or about November 18, 2022, HAKIME transported a firearm and ammunition from Pennsylvania to New York State as part of a transaction in which he obtained and supplied the firearm and ammunition to CC-1 and CC-2.

8.    Specifically, on or about November 18, 2022, JAMIL HAKIME, the defendant, who resides in Manhattan, drove to Pennsylvania with CC-1 and CC-2 in order to supply CC-1 and CC-2 with a generation 5 Glock 17 handgun (the "Firearm") and 9mm bullets (the "Ammunition"). After retrieving the Firearm and Ammunition in Pennsylvania, HAKIME drove the Firearm and Ammunition, together with CC-1 and CC-2, who are also residents of New York State, back to Manhattan.

9.    Earlier that same day, during a recorded phone call, JAMIL HAKIME, the defendant, had informed CC-1 and CC-2, as well as another associate who is an inmate at a state detention facility ("CC-3"), that HAKIME intended to obtain a specific type of firearm for CC-1 and CC-2, namely, a generation 5 Glock 17 handgun with a "laser" (a red dot optic device)—that is, the Firearm. HAKIME then drove CC-1 and CC-2 in HAKIME's vehicle from Manhattan to a property he co-owns in Pennsylvania (the "Pennsylvania House") to obtain the Firearm and Ammunition. After obtaining the Firearm and Ammunition, HAKIME, CC-1, and CC-2 drove with the Firearm and Ammunition from Pennsylvania back to Manhattan. CC-1 and CC-2 then hid the Firearm and Ammunition at the Manhattan apartment where CC-2 was residing ("Manhattan Apartment-1"). Later that night, law enforcement officers recovered the Firearm and Ammunition from Manhattan Apartment-1.

3

## HAKIME's Unlawful Transport and Possession of the Firearm and Ammunition

10.  Based on my review of open source data, motor vehicle records, and law enforcement records, I have learned, among other things, the following:

a.  JAMIL HAKIME, the defendant, resides and works in Manhattan.

b.  HAKIME drives a Range Rover (the "Range Rover"), which is co-registered to HAKIME and another individual ("Individual-1").

c.  While HAKIME resides in Manhattan, he also co-owns the Pennsylvania House with Individual-1.

11.  Based on my review of open source data, phone records, geolocation data, and video surveillance, I have learned, among other things, the following:

a.  CC-2 is associated with a phone number ending in 8575 (the "8575 Number").

b.  JAMIL HAKIME, the defendant, is associated with a phone number ending in 6198 (the "6198 Number").

c.  On or about November 18, 2022, CC-2, using the 8575 Number, exchanged several calls with HAKIME, using the 6198 Number, which began shortly before HAKIME picked up CC-1 and CC-2 in Manhattan and drove them to Pennsylvania to acquire the Firearm and Ammunition and continued after HAKIME dropped off CC-1 and CC-2 in Manhattan later that evening with the Firearm and Ammunition.

12.  Based on my review of recorded jail calls, I have learned, among other things, that on or about November 18, 2022, at approximately 3:32 p.m., while inside the Range Rover with JAMIL HAKIME, the defendant, CC-2 placed a call to CC-3, an inmate at a state detention facility.[1]  During the call, CC-2 informed CC-3 that CC-2 was with "Jay," which I understand was a reference to

---

[1] Based on my review of law enforcement records, I know that CC-3 has multiple prior state felony convictions.  Most recently, on or about August 10, 2021, CC-3 was arrested, and on or about February 15, 2022, CC-3 was convicted of criminal possession of a weapon in the second degree in connection with possessing a loaded firearm, in violation of New York Penal Law § 265.03, for which CC-3 is currently serving CC-3's sentence.

HAKIME for the reasons described herein, and HAKIME and CC-3 subsequently stated, among other things, the following:

      a.   HAKIME informed CC-3 that HAKIME and CC-2 were going to Pennsylvania to "pick up [the] 43," which based on my training, experience, and participation in this investigation, I believe was a reference to a Glock 43 firearm.

      b.   HAKIME subsequently stated, however, that he had the "Gen 5 with the las[er] and all," which based on my training, experience, and participation in this investigation, I believe was a reference to the Firearm—that is, a generation 5 Glock 17 handgun with a "laser" (a red dot optic device) mounted on top.

      c.   CC-3, in turn, informed HAKIME that CC-3 needed to purchase a firearm when CC-3 was released from custody and that "the 17 was rough," which based on my training, experience, and participation in this investigation, I believe was a reference to the fact that, based on my review of law enforcement records, a Glock 17 firearm was seized from CC-3's residence in a particular apartment building on Second Avenue in Manhattan (the "Second Avenue Apartment Building") during a search in conjunction with CC-3's 2021 arrest.

      d.   HAKIME then told CC-3 that "he [HAKIME] has the connect" and can procure whatever type of firearm CC-3 wanted, stating, "I got everything now . . . I got the D, I got the C, name one of the letters in the alphabet," which based on my training, experience, and participation in this investigation, I believe was a reference to HAKIME having access to various types of firearms.

      e.   HAKIME also stated, "I'm that [N word] in the building son, I took over your spot," which based on my training, experience, and participation in this investigation, including my review of law enforcement reports and records, I believe refers to HAKIME's having taken over firearms trafficking activity for CC-3 at the Second Avenue Apartment Building since CC-3's arrest. I further know, based on my review of recorded jail calls, law enforcement databases, and criminal history records, that CC-3, CC-3's apparent wife ("CC-4"), and HAKIME are all associated with apartments in the Second Avenue Apartment Building—which appears to be a location where HAKIME and his associates have engaged in firearms trafficking activity, as further described below.

      13.  Based on my participation in this investigation, my conversations with other law enforcement officers, and my review

of open source records, law enforcement records and reports, phone records, geolocation and license plate recognition data, and video surveillance footage, I have learned, among other things, the following:

a. On or about November 18, 2022, at approximately 5:00 p.m., that is, less than two hours after the above-described call among JAMIL HAKIME, the defendant, CC-2, and CC-3, HAKIME drove with CC-1 and CC-2 in the Range Rover, via the New Jersey Turnpike, to the Pennsylvania House.

b. Later that evening, at approximately 9:45 p.m., HAKIME returned to Manhattan in the Range Rover with CC-1 and CC-2 and drove to the vicinity of Manhattan Apartment-1, where CC-2 resides.

c. At approximately 9:45 p.m., immediately after HAKIME's return to Manhattan, CC-1 and CC-2 were captured on video surveillance footage entering Manhattan Apartment-1, where they hid the Firearm and Ammunition in a backpack (the "Backpack") in CC-2's bedroom. CC-1 and CC-2 then departed Manhattan Apartment-1.

d. Shortly thereafter, a family member of CC-2 discovered the Firearm and Ammunition inside CC-2's bedroom and relayed that information to law enforcement. Law enforcement officers went to Manhattan Apartment-1, where the family member voluntarily provided the officers the Backpack that contained the Firearm and Ammunition.

e. Based on my observations of the Firearm, I know that the Firearm is a generation 5 Glock 17 with an extended magazine and a weapon-mounted light and red dot optic device that allows a user to have better aim. The Ammunition consists of 9mm bullets and was located along with the Firearm in the Backpack. Below is a photograph of the Firearm:



       14.  Based on my participation in this investigation, my conversations with other law enforcement officers, and my and other law enforcement officers' physical surveillance of the Second Avenue Apartment Building, I have learned, among other things, the following:

       a.  A few days later, on or about November 22, 2022, at approximately 2:00 p.m., an individual who I believe to be JAMIL HAKIME, the defendant, based on my participation in this investigation, including my review of images of HAKIME on social media accounts associated with HAKIME, and the Range Rover were observed in the vicinity of the Second Avenue Apartment Building. Two individuals, including an individual whom I believe, based on my participation in this investigation, including my review of photographs of CC-4 maintained in law enforcement databases, to be CC-4, exited the Second Avenue Apartment Building holding large black garbage bags, which appeared to be full, and handed those bags to HAKIME, who placed them in the trunk of the Range Rover, as depicted in the photograph below:



b.     Shortly thereafter, HAKIME entered the Second Avenue Apartment Building.   When he emerged, he was carrying a black backpack, as depicted below, which he then brought with him inside the Range Rover.



c.     HAKIME then drove off in the Range Rover onto

the New Jersey Turnpike, in a direction that is consistent with the location of the Pennsylvania House.

15. Based on my review of law enforcement records and recorded prison calls, I know that on or about November 22, 2022, at approximately 3:20 p.m.—that is, shortly after JAMIL HAKIME, the defendant, and CC-4 were observed transferring bags out of the Second Avenue Apartment Building and into the Range Rover—CC-3 and CC-4 spoke on the phone. On that recorded call, CC-4 and CC-3 stated, among other things, the following:

a. CC-4 informed CC-3 that CC-2, whom CC-4 referred to by CC-2's first name, was "in trouble."

b. CC-4 conveyed that, as a result, CC-4 had to "pack Jay up," which I believe, based on my training, experience, and participation in this investigation, was CC-4 conveying to CC-3 that CC-4 had to pack up items and evidence associated with HAKIME and his firearms trafficking activities that were located in the Second Avenue Apartment Building, in an effort to avoid law enforcement detection.

c. CC-4 further stated that HAKIME was "laying low."

d. CC-3 informed CC-4 that CC-3 understood HAKIME to have a place in Pennsylvania, which I believe to be a reference to the Pennsylvania House.

16. Based on my participation in this investigation, my conversations with other law enforcement officers, my review of license plate recognition data, and physical surveillance, I have learned, among other things, the following:

a. The Range Rover was observed at the Pennsylvania House on or about November 24 and 25, 2022.

b. On or about November 28 and November 29, 2022, JAMIL HAKIME, the defendant, and the Range Rover were again observed in the immediate vicinity of the Second Avenue Apartment Building in Manhattan.

17. Based on my review of criminal history records, I have learned, among other things, the following:

a. On or about June 17, 1986, JAMIL HAKIME, the defendant, was convicted upon a plea of guilty of attempted robbery in the second degree, in violation of New York Penal Law § 160.10,

a Class D felony that carries a maximum term of imprisonment of seven years.  That same day, HAKIME was sentenced to a term of one to three years of imprisonment.

        b.  On or about August 21, 1986, HAKIME was convicted upon a plea of guilty of burglary in the second degree, in violation of New York Penal Law § 140.25(2), a Class C violent felony that carries a maximum term of imprisonment of 15 years. That same day, HAKIME was sentenced to a term of 18 to 54 months of imprisonment.

        c.  From on or about June 25, 1986, to on or about April 21, 1988, HAKIME was incarcerated on these charges.

        18. Based on my conversations with other law enforcement officers and my training and experience, I know that Glock 17 firearms—that is, the type of Firearm that JAMIL HAKIME, the defendant, possessed and transported from Pennsylvania to New York State—and the type of Ammunition recovered with the Firearm are not manufactured in New York State.

        WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JAMIL HAKIME, the defendant, and that the defendant be arrested and imprisoned or bailed, as the case may be.

                        /s/ Nathan Rudnick, with permission by SDA

                        NATHAN RUDNICK
                        Special Agent
                        Federal Bureau of Investigation

Sworn to me through the transmission of this
Affidavit by reliable electronic or telephonic means, pursuant
to Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this

 29th  day of November, 2022

HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK