UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JAMIL HAKIME,

                     Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/13/2023_

22 Cr. 699 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Defendant, Jamil Hakime, appeals the detention order issued by the Honorable Stewart D. Aaron on December 2, 2022.  Appeal, ECF No. 11; *see also* ECF No. 4; Dec. 2, 2022 Tr., ECF No. 5.  For the reasons stated below, Judge Aaron's order is AFFIRMED.

    I.    Background

    Pursuant to an indictment dated December 20, 2022, Hakime is charged with conspiracy to transport a firearm interstate, interstate transport of a firearm, and being a felon in possession of a firearm or ammunition.  Indictment ¶¶ 1–5, ECF No. 7.

    On June 17, 1986, Hakime was convicted of attempted robbery in the second degree under New York Penal Law § 160.10, a crime punishable by imprisonment for a term exceeding one year.  Indictment ¶ 5; Compl. ¶ 17(a), ECF No. 1.  On August 21, 1986, Hakime was convicted of burglary in the second degree, in violation of New York Penal Law § 140.25(2), a crime punishable by imprisonment for a term exceeding one year.  Compl. ¶ 17(b).  Since 2014, Hakime has been employed by the Administration for Children's Services as a youth development specialist in a juvenile detention facility.  *See* Dec. 2, 2022 Tr. at 12:5-14.

    The Government alleges that, on November 18, 2022, one of Hakime's co-conspirators ("CC-1") posted on Twitter that he intended to "shoot up a synagogue."  *Id.* at 7:17-22.  A second co-conspirator ("CC-2") contacted Hakime to obtain a firearm.  *Id.* at 7:22-25.  Hakime,

CC-1, and CC-2 subsequently called an inmate at a state detention facility ("CC-3") who is currently serving a sentence for criminal possession of a weapon in the second degree in connection with possessing a loaded firearm. Compl. ¶¶ 9, 12 n.1. The phone call was recorded. *Id.* ¶ 9. During the call, CC-3 stated that CC-3 would need to purchase a firearm when CC-3 was released from custody. *Id.* ¶ 12(c). Hakime told CC-3 that he could procure "whatever type of firearm CC-3 wanted." *Id.* ¶ 12(d). Hakime stated that he "took over [CC-3's] spot," which law enforcement officers believe to be a reference to Hakime having taken over CC-3's gun trafficking activity in Manhattan since CC-3's arrest on February 15, 2022. *Id.* ¶ 12(e); *see also id.* ¶ 12 n.1. Hakime also stated that he intended to procure a specific type of firearm for CC-1 and CC-2, namely, a generation 5 Glock 17 handgun with a red dot optic device. *Id.* ¶ 9.

After the call, Hakime drove with CC-1 and CC-2 from New York to a property that he co-owns in Pennsylvania and obtained a generation 5 Glock 17 handgun and 9mm Luger caliber bullets. Compl. ¶¶ 8–9; Indictment ¶¶ 3, 5. At the Pennsylvania property, Hakime showed CC-1 and CC-2 how to use the handgun and requested that CC-1 and CC-2 wipe down the handgun to remove Hakime's fingerprints. Dec. 2, 2022 Tr. at 8:6-9. Hakime, CC-1, and CC-2 then drove back to New York. Compl. ¶ 9. CC-1 and CC-2 hid the handgun and ammunition at CC-2's Manhattan apartment, where they were recovered by law enforcement officers the same night. *Id.* ¶¶ 9, 13(c)–(d); Indictment ¶¶ 3, 5. As a result, CC-1 and CC-2 were arrested. Dec. 2, 2022 Tr. at 12:20–13:5.

On November 22, 2022, Hakime and a fourth co-conspirator ("CC-4") removed several large garbage bags and a backpack from Hakime's apartment and placed them in Hakime's car. Compl. ¶¶ 14(a)–(b). Hakime later drove to his Pennsylvania property. *Id.* ¶ 16(a). On a

2

recorded phone call, CC-3 and CC-4 stated that CC-2 was "in trouble," that CC-4 had to "pack [Hakime] up," that Hakime was "laying low," and that Hakime had a residence in Pennsylvania. *Id.* ¶ 15.  Law enforcement officers interpreted this to mean that CC-4 and Hakime needed to remove evidence associated with Hakime's gun trafficking activities from Hakime's apartment to avoid law enforcement detection.  *Id.* ¶ 15(b).

On December 2, 2022, Hakime appeared before Judge Aaron, who ordered that Hakime be detained on the ground that he posed a danger to the community.  ECF No. 4.  On January 4, 2023, Hakime was arraigned and pleaded not guilty on all counts before the Honorable Sarah Netburn.  ECF No. 9.  On January 6, 2023, Hakime requested a bail hearing and moved for revocation of Judge Aaron's detention order pursuant to 18 U.S.C. § 3145(b).  Appeal.  On January 9, 2023, the Court denied Hakime's request for a second bail hearing.  ECF No. 14.

II.     Legal Standard

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant.  *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Jones*, 566 F. Supp. 2d 288, 289–90 (S.D.N.Y. 2008).  In reviewing such a decision, the district court "may rely on the record of the proceedings before the magistrate judge[.]"  *United States v. Fox*, No. 22 Cr. 53, 2022 WL 1420780, at *3 (W.D.N.Y. May 5, 2022) (citation omitted), *aff'd*, No. 22-1043, 2022 WL 2564600 (2d Cir. July 8, 2022).

Under the Bail Reform Act, a defendant shall be detained if "no condition or combination of conditions will reasonably assure the[ir] appearance . . . as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  A court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;

3

(3) the history and characteristics of the defendant; and (4) the nature and seriousness of danger to any person in the community posed by the defendant's release. 18 U.S.C. § 3142(g). A court's findings pursuant to § 3142(e) must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

   III.   <u>Application</u>

At the hearing before Judge Aaron, the Government argued that Hakime should be detained because he poses a danger to the community as well as a flight risk. *See* Dec. 2, 2022 Tr. at 7:8–19:17. The Government contended that Hakime is a danger to the community because of his access to weapons; his involvement in gun trafficking activity, which he conducts from his Manhattan apartment building; and his willingness to dispose of evidence, lie to law enforcement officers, and aid and abet others in the commission of criminal activity. *Id.* at 7:8–15:6. The Government stated that Hakime did not cooperate with Pretrial Services during the preparation of the Pretrial Services Report; he provided misleading or inaccurate information; and, in one instance, he refused to provide information altogether. *Id.* at 15:7–16:13. The Government also stated that Hakime's partner assisted him in disposing of evidence. *Id.* at 26:5-16. The Government further argued that Hakime posed a flight risk because he has access to multiple residences both inside and outside the state, has family members in other U.S. states as well as other countries, has a history of failing to appear in court in response to criminal charges and summonses between 1985 and 2013, and faces a lengthy sentence in this case. *Id.* at 16:13–18:16.

Hakime argued that he is not a danger to the community because law enforcement officers searched his residence in Pennsylvania and did not find firearms, he was not aware of

what any alleged co-conspirators intended to do, and his alleged involvement in gun trafficking is speculative. *Id.* at 21:2–22:5. Additionally, he contended that he does not pose a flight risk because his criminal history ended in 2001, and any alleged failures to appear in court occurred over a decade ago in relation to offenses of which he was not convicted. *Id.* at 19:24–20:6; 23:5-10. He argued that he has strong ties to the community because he is in a committed relationship with his partner with whom he co-owns a residence in Pennsylvania, *id.* at 20:7-17, and he has been employed at the same job for eight years and intends to keep that employment, *id.* at 19:23-24; 24:8-16. And, he stated that he would not risk fleeing because, in doing so, he would lose his only asset, his home; would lose his opportunity to defend himself; and would ultimately face additional charges and a longer sentence. *Id.* at 23:17-24. Hakime proposed that he be released on a $75,000 personal recognizance bond cosigned by one person and secured by his share of the Pennsylvania residence he co-owns and that he be required to surrender his passport. *Id.* at 22:11-24. Pretrial Services recommended that Hakime be detained. *Id.* at 27:15-16.

Judge Aaron found that the Government established by clear and convincing evidence that there are no conditions he can impose which would reasonably assure the safety of the community. *Id.* at 27:11-20. In making his decision, Judge Aaron relied mainly on the nature and circumstances of the offense charged and noted that the evidence against Hakime is strong. *Id.* at 27:20–28:7. Judge Aaron also acknowledged that, although dated, Hakime does have a criminal history including serious offenses. *Id.* at 28:3-4. Judge Aaron did not base his decision on risk of flight. *Id.* at 28:7-8.

The Court AFFIRMS Judge Aaron's decision. The Court agrees that the Government has established by clear and convincing evidence that Hakime poses a danger to the community and

that there are no conditions of release that would reasonably assure the safety of the community. Gun trafficking and the possession of a firearm by a felon, by their nature, pose a substantial risk to the community. *See United States v. Dillard*, 214 F.3d 88, 104 (2d Cir. 2000); *United States v. Campbell*, 28 F. Supp. 2d 805, 809 (W.D.N.Y. 1998). And, "[t]he clandestine sale of . . . weapons by an unlicensed, convicted felon to another who also could have been a felon intent on criminal activity poses a significant danger" to the community. *Campbell*, 28 F. Supp. 2d at 810. Hakime procured a gun for two individuals intent on criminal activity and promised another convicted felon that he would procure a gun for that person upon release from prison. Hakime conducted his gun trafficking activity from his residences in Manhattan and in Pennsylvania. The weight of evidence against Hakime is strong and includes photos, surveillance, and recorded phone calls. And, Hakime has a criminal history that, although dated, includes two serious offenses. For these reasons, the Court concludes that no conditions of release can reasonably assure the safety of the community. Because the Court's assessment of the danger posed to the community is sufficient to affirm Judge Aaron's detention order, the Court need not assess whether Hakime also poses a flight risk.

Accordingly, Hakime's appeal of Judge Aaron's detention order is DENIED, and Judge Aaron's order is AFFIRMED.

SO ORDERED.

Dated: January 13, 2023
New York, New York

_____
ANALISA TORRES
United States District Judge